[No. 15281.   Department One.   May 28, 1919.]

THE STATE OF WASHINGTON, *on the Relation of Arthur Best, Plaintiff,* v. THE SUPERIOR COURT FOR OKANOGAN COUNTY, *Respondent.*[1]

INDIANS (16, 17)—CRIMINAL PROSECUTIONS—JURISDICTION OF STATE COURTS. The state courts have jurisdiction to try for larceny, committed without the limits of allotted land, a tribal Indian of the quarter-blood who, under the Dawes act (3 Fed. Stat. Ann. 821), was a ward of the government and an allottee of lands in an Indian reservation which had been opened and restored to the public domain, subject to the reservations and allotments; since the reservation was no longer an Indian reservation and Congress has not attempted to enact criminal statutes dealing with acts committed by Indians outside the territorial jurisdiction of the United States.

Application filed in the supreme court March 17, 1919, for a writ of prohibition to prohibit the superior

[1]Reported in 181 Pac. 688.

court for Okanogan county, Neal, J., from trying the relator upon a charge of grand larceny. Denied.

*P. D. Smith,* for relator.

*W. C. Gresham,* for respondent.

TOLMAN, J.—This is an original application for a writ of prohibition to be directed to the superior court for Okanogan county, prohibiting and restraining that court from proceeding to try the relator upon two separate charges of grand larceny, as presented by information filed by the prosecuting attorney of that county.

Relator is an Indian of the quarter-blood, a member of the Colville tribe of Indians, and has never severed his tribal relations. He was allotted a tract of land by the United States government in 1914, upon the south half of the diminished Colville Indian reservation, in Okanogan county, and has ever since held and occupied the same; but the title thereto is held in trust for him by the United States government, and will continue to be so held until the expiration of the trust period of twenty-five years. It is alleged that the crimes with which the relator is charged were committed, if committed at all, within the limits of the south half of the diminished Colville Indian reservation; but it is not claimed that they, or either of them, were committed upon allotted land or lands within the exclusive jurisdiction of the United States. The sole question here presented is whether or not the state courts have jurisdiction to try an Indian, who has not severed his tribal relations, and who is an allottee and ward of the government, upon a charge of grand larceny committed within the state, but without the limits of an Indian allotment or other Indian country. Relator obtained his allotment under and by virtue of

the act of Feb. 8, 1887, 3 Fed. Stat. Ann. (2d ed.) 821, and acts supplementary thereto and amendatory thereof, known as the "Dawes Act," the title of which reads:

"An Act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the Territories over the Indians and for other purposes."

It is contended that, by section 6 of the Dawes Act, Congress intended that such allottee Indians should not become subject to state laws until the expiration of the trust period and the conveyance of the allotted land by patent in fee, and that when the supreme court of the United States held that, under this section, an allottee Indian became a citizen upon receiving his allotment (*In re Heff,* 197 U. S. 488), Congress proceeded, by its amendment of May 8, 1906, to make certain its meaning, and to overcome the rule of the *Heff* case, by providing thereby:

"That at the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section five of this Act, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside." 3 Fed. Stat. Ann. (2d ed.), p. 830.

But though Congress may have intended to overcome the ruling in the *Heff* case by this subsequent legislation, it does not follow that it intended thereby that the state or territory in which the Indian might reside should be deprived of jurisdiction to proceed against such Indian allottee, not yet a citizen, for a violation of its criminal laws. By the enabling act, Washington was authorized to adopt a constitution, establish a state government, and was admitted into

the Union upon equal footing with the original states,
which carried with it the full power of enacting laws
against crimes and punishing all those within her bor-
ders who might transgress such laws, be they citizens
or not. This must be so, since the state became sov-
ereign, with full power, except only those powers
which had been delegated to the national government.
And relator has not contended, and cannot contend,
that any power was ever delegated to the national
government to enact or enforce criminal laws appli-
cable within the territorial limits of any state, except
only those portions thereof which were exclusively
within the jurisdiction of the Federal government,
such as Indian reservations and the like. What is
still known as the south half of the diminished Colville
Indian reservation is no longer an Indian reservation.
By virtue of the act of Congress of March 22, 1906,
the president of the United States, by his proclama-
tion of May 3, 1916, restored all of the south half of
the diminished Colville Indian reservation to the public
domain, subject only to the reservations and allot-
ments of land in severalty to the individual Indians.
Moreover, Congress has never attempted to enact any
criminal statute dealing with any act committed by an
Indian outside of the territorial jurisdiction of the
United States. And the only legislation by Congress
concerning crimes committed by Indians, to which our
attention is called, is § 2145 of the Revised Statutes,
which in part provides:

"The general laws of the United States as to the
punishment of crimes committed in any place within
the sole and exclusive jurisdiction of the United
States, except the District of Columbia, shall extend
to the Indian country."

Where Congress has attempted to exercise no juris-
diction, it requires something more than ingenious

and pleasing argument to convince us that the state is powerless to maintain her dignity and enforce her laws as against any individual within her boundaries, no matter what his status may be as to citizenship or lack of it. Without prolonging this opinion or quoting from the many decisions which, in our judgment, are applicable, we regard the case of *Ward v. Race Horse,* 163 U. S. 504, as directly in point, and the learned opinion of the present Chief Justice of the supreme court of the United States, there given, we think answers every contention raised by relator. That this decision was rendered prior to the amendment of May 8, 1906, to the Dawes Act, cannot be urged as a reason why it is not now applicable, because, after the admission of this state to the Union, Congress had no power to take away or abridge any of its sovereign rights, and if the amendment referred to be construed as an attempt to do so, it must be held to have failed of its purpose.

Writ denied.

CHADWICK, C. J., MOUNT, MITCHELL, and HOLCOMB, JJ., concur.