[No. 34112. *En Banc.* November 19, 1959.]

*In the Matter of the Application for a Writ of Habeas Corpus of* PAUL SEYMOUR, *Petitioner,* v. MERLE E. SCHNECKLOTH, *as Superintendent of the State Penitentiary, Respondent.*[1]

[1]Reported in 346 P. (2d) 669.

*Earl K. Nansen,* for petitioner.

*The Attorney General* and *Michael R. Alfieri, Assistant,* for respondent.

WEAVER, C. J.—Paul Seymour was charged with second-degree burglary allegedly committed in the town of East Omak, Okanogan county, Washington.

When arraigned before the superior court, he appeared in person and by appointed counsel and pleaded "not guilty" to the charge. No jurisdictional issue was raised.

Subsequently, counsel petitioned for leave to withdraw the plea of "not guilty" to the charge of second-degree burglary and to enter a plea of " 'guilty' to the included offense of *Attempted* Burglary in the Second Degree." Permission was granted; the "not guilty" plea was withdrawn and, after consultation with counsel, Seymour pleaded and was adjudged "guilty of the crime of *Attempted* Burglary in the Second Degree." (Italics ours.) He was sentenced to the penitentiary for a period of not more than seven and one half years. Again, no jurisdictional issue was raised; however, in the "Statement of Trial Judge and Prosecuting Attorney" filed fourteen days after the judgment and sentence, Seymour was described as an "Indian boy who works occasionally." His associates were named as "Indians and breeds of about defendant's own age."

Paul Seymour filed his petition for a writ of *habeas corpus* in this court, alleging that he was an enrolled member of the Colville Indian tribes and a ward of the United States government; and that the "purported crime" was committed in "Indian country," as that term is defined in 18 U. S. C. (1952 ed.) § 1151.

The return and answer to the petition for a writ of *habeas corpus* raised issues of fact that could not be "determined from the face of the record," so this court referred the matter to the trial court. See Rule on Appeal 56 (5), RCW Vol. 0.

"Burglary" is one of the crimes enumerated in the Ten Major Crimes Act; hence, exclusive jurisdiction thereof is in the courts of the United States when the alleged crime is committed by an Indian in "Indian country." 18 U. S. C. (1952 ed.) § 1153. The statute also provides that

". . . the offense of burglary shall be defined and punished in accordance with the laws of the State in which such offense was committed." 18 U. S. C. (1952 ed.) § 1153.

We do not find it necessary, in the instant case, to decide whether attempted burglary in the second degree is within the ambit of the Ten Major Crimes Act. Upon our reference, the superior court of Okanogan county concluded that the crime was not committed on land within the limits of an Indian reservation under the jurisdiction of the United States government, even though it was committed on land within the limits of the "Diminished Colville Indian Reservation."

The trial judge included in his "Findings of Fact on Reference from Supreme Court" an exhaustive analysis of the laws and presidential proclamations applicable to the Colville Indian reservation.

He said, in part:

"The remaining portion of said reservation is commonly referred to as the 'South Half' or 'Diminished Colville Indian Reservation.' *The locus in quo is in this so-called 'South Half' of the Diminished Colville Indian Reservation.*

". . .

"No further change in the status of said reservation was made until the Act of Congress of March 22, 1906 (see Vol. 34. U.S. Stats. at Large, 80- (Chapter 1126 fifty-ninth Congress Session 1).

" 'An Act to Authorize the Sale and Disposition of Surplus or Unallotted Lands of the Diminished Colville Indian Reservation, in the State of Washington and for other purposes.'

". . .

"Under authority of this Act the President did, by proclamation, under date of May 3, 1916, open this, the diminished Colville Indian Reservation (South Half) for entry and settlement under the homestead laws of the United States. (See 4 Kappler's Indian Affairs, Laws and Treaties 966).

". . .

". . . an examination of the Presidential Proclamation of May 3, 1916, specifically provides definite lands that are reserved to the use of the Indians. *The townsite of Omak is not among those lands so reserved.*

". . .

"Under the above-mentioned statutes and proclamations of May 3, 1916, the federal government again diminished the Colville Reservation reducing it in size from that specified by the Act of 1892. See Shore v Shell Petroleum Corporation 55 Fed (2) 696; State ex rel Irvine v District Court, 239 Pac (2) 272.

"It is significant in this respect that the records of title to lands on the so-called 'South Half' or 'diminished Colville Indian Reservation' so far as they appear in Okanogan County reveal that: approximately 148,300 acres of these lands are privately owned, title having been acquired from the federal government either under the Homestead Laws or by patent in fee issued to Indian allottees. Approximately 149,500 acres are Indian allotments with title still held in trust by the federal government for the allottees; approximately 342,940 acres is so-called 'tribal lands'. That is, lands the title to which is held by the government for the use and benefit of the tribe. The federal government retains no jurisdiction, exclusive or otherwise, over the 148,300 acres of privately owned lands within the South half of what was once the 'diminished Colville Indian Reservation.'

"From the foregoing it is concluded that the place where the crime was committed by the Petitioner is not 'Indian Country' as that term is defined in Title 18 USCA Section #1151, the same not being land within the limits of an Indian reservation under the exclusive jurisdiction of the United States government." (Italics ours.)

The case of *State ex rel. Best v. Superior Court*, 107 Wash. 238, 181 Pac. 688 (1919), is in point. In that case, a member of the Colville tribe, who had never severed tribal relations, sought a writ of prohibition to prevent the superior court of Okanogan county from trying him on a charge of grand larceny. In denying the writ, this court said:

". . . What is still known as the south half of the diminished Colville Indian reservation is no longer an Indian reservation. By virtue of the act of Congress of March 22, 1906, the president of the United States, by his proclamation of May 3, 1916, restored all of the south half of the

diminished Colville Indian reservation to the public domain, subject only to the reservations and allotments of land in severalty to the individual Indians. . . ." *State ex rel. Best v. Superior Court, supra,* p. 241.

The crime not having been committed in "Indian country," as defined by statute (18 U.S.C. (1952 ed.) § 1151), the courts of the United States did not have exclusive jurisdiction. The superior court of Okanogan county had jurisdiction of petitioner; hence, the petition for writ of *habeas corpus* is denied.

It is so ordered.

MALLERY, DONWORTH, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

HILL and FINLEY, JJ. (concurring)—We agree that the *locus* of the offense was not in "Indian country" and concur in the result.