[No. 33653.   Department Two.   November 1, 1956.]

*In the Matter of the Application of* Joe Andy *for a Writ of Habeas Corpus.*[1]

*Tonkoff, Holst & Hopp,* for petitioner.

*Don J. Clark* and *Richard C. Smith,* for respondent.

Weaver, J.—This is an original application for a writ of *habeas corpus.*

Petitioner alleges that his incarceration in the Washington state penitentiary is illegal and void, because he was not subject to the jurisdiction of the superior court of this state.

The stipulated facts are these:  that petitioner is an un-emancipated, one-quarter blood American Indian, enrolled in the Yakima Indian tribe (prior to his commitment, he resided upon the Yakima Indian reservation); that he pleaded guilty to the charge of second degree burglary; that the alleged crime was committed within the geographic bound-

[1]Reported in 302 P. (2d) 963.

aries of the Yakima Indian reservation, upon land which had originally been a part of an Indian allotment, but, at the time of the alleged crime, was patented in fee to a non-Indian by the United States; that none of these facts was brought to the attention of the court at the time of petitioner's plea and sentence, although known to the then prosecuting attorney; that the question of the state's jurisdiction over the person of petitioner and of the subject matter of the charge was not called to the attention of the court; that petitioner had waived his right to counsel at the time he pleaded guilty and sentence was imposed.

Did the superior court have jurisdiction? It is agreed that the primary issue is whether the term "Indian country" as defined in 18 U. S. C. (1952 ed.) § 1151, and as used in 18 U. S. C. (1952 ed.) § 1153, includes land within the limits of an Indian reservation which the United States has conveyed by patent to a non-Indian.

The following Federal statutes are pertinent to our inquiry.

18 U. S. C. (1952 ed.) § 1152 "Laws governing.

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, *shall extend to the Indian country.*" (Italics ours.)

18 U. S. C. (1952 ed.) § 1151. "Indian country defined.

"Except as otherwise provided in sections 1154 and 1156 [which are not pertinent to the question before us] of this title, the term 'Indian country,' as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, *notwithstanding the issuance of any patent,* and, including rights-of-way running through the reservation . . ." (Italics ours.)

18 U. S. C. (1952 ed.) § 1153. "Offenses committed within Indian country.

"Any Indian who commits against the person or property of another Indian *or other person* any of the following offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson,

*burglary,* robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." (Italics ours.) (Generally known as the "Ten Major Crimes Act.")

18 U. S. C. (1952 ed.) § 3242. "Indians committing certain offenses; acts on reservations.

"All Indians committing any of the following offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny on and within the Indian country shall be tried in the same courts, and in the same manner, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

Respondent argues that the phrase "all land within the limits of any Indian Reservation," as it appears in § 1151, *supra,* is qualified by the phrase "under the jurisdiction of the United States Government;" that the *land* upon which the alleged crime was committed has been transferred by patent to a non-Indian; hence, the state has jurisdiction of the alleged crime.

This construction is artificial and strained. It is neither grammatically nor legally sound, because it assumes that the phrase "under the jurisdiction of the United States Government" modifies the word *land* when it actually modifies the word *reservation.*

When a contrary intention does not appear in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. The last antecedent is the last word which can be made an antecedent without impairing the meaning of the sentence. *Davis v. Gibbs,* 39 Wn. (2d) 481, 483, 236 P. (2d) 545 (1951), and cases cited. In this instance, the last antecedent is the word *reservation.*

Further, we cannot agree with respondent's contention that the phrase "notwithstanding the issuance of *any* patent" refers to patents issued to Indians and not to patents issued to non-Indians. It appears from § 1151, *supra,* that patented land, whether it be patented to an Indian or to

a non-Indian, comes within the language of *"all* land within the limits of any Indian reservation."

The precise question before us, presented upon comparable facts and identical arguments, has been exhaustively explored and discussed in *State ex rel. Irvine v. District Court,* 125 Mont. 398, 239 P. (2d) 272 (1951), wherein the Montana court specifically answered and refused to adopt respondent's remaining arguments supporting the position that petitioner was not entitled to a writ of *habeas corpus* under the law and facts.

Irvine, an enrolled Indian of the Flathead tribe, was charged and pleaded guilty "without benefit of counsel" to the crime of burglary. The burglarized store in the town of Ronan, Montana, was within the exterior boundaries of the Flathead Indian reservation, but

". . . by appropriate instrument the United States government has ceded all right, title and interest in and to the property upon which the store building described in the information stands." (p. 402)

The Montana supreme court held that the state district court did not have jurisdiction to try Irvine under these circumstances. The judgment and sentence were reversed, the information dismissed, and Irvine discharged from custody.

The Montana court discussed the basic fallacy of respondent's argument in the instant case. It said:

"It seems to us that the attorney general and the court below have placed too much emphasis on the ownership of land, and have not given due weight to the fact that the jurisdiction of the federal government over the Indian and tribes rests, *not upon the ownership of and sovereignty of certain tracts of land,* but upon the fact that, as wards of the general government, they are the subjects of federal authority within the state when the mentioned offense is committed as herein stipulated. See *Rice v. Olson, supra,* 324 U. S. 786, at pages 790, 791, 65 S. Ct. 989." (Italics ours.)

■ We are constrained to hold that the term "Indian country," as defined in the Federal statutes, includes land which the United States government has conveyed by patent

to a non-Indian, when the land is within the exterior boundaries of an Indian reservation; and that the Federal government has exclusive jurisdiction over an Indian, who is alleged to have committed one of the ten major crimes thereon.

Our conclusion is supported by the weight of authority and by the reason and logic of the better considered cases. *State v. Pepion,* 125 Mont. 13, 230 P. (2d) 961 (1951); *State ex rel. Irvine v. District Court, supra; State ex rel. Bokas v. District Court,* 128 Mont. 37, 270 P. (2d) 396 (1954); *Williams v. United States,* 215 F. (2d) 1 (C.A. 9th; 1954); *United States v. Celestine,* 215 U. S. 278, 54 L. Ed. 195, 30 S. Ct. 93 (1909); *contra: State v. Johnson,* 212 Wis. 301, 249 N. W. 284 (1933).

The writ of *habeas corpus* shall issue, and respondent is ordered to release petitioner from custody.

MALLERY, OTT, and ROSELLINI, JJ., concur.