55 Wn.2d 90 (1959)
346 P.2d 658
In the Matter of the Application for a Writ of Habeas Corpus of JOSEPH JOE WESLEY, Petitioner,
v.
MERLE E. SCHNECKLOTH, as Superintendent of the State Penitentiary, Respondent.[1]
No. 34127.
The Supreme Court of Washington, En Banc.
November 19, 1959.
*91 Joseph Joe Wesley, pro se.
The Attorney General and Michael R. Alfieri, Assistant, for respondent.
WEAVER, C.J.
Joseph Joe Wesley was charged in the superior court with grand larceny committed in Yakima county, Washington. Having waived counsel and pleaded guilty, he was sentenced to the state penitentiary for a period of not more than fifteen years. Nothing in the record indicates that Mr. Wesley's status as an enrolled member of the Yakima Indian tribe was ever brought to the attention of the trial court; nor does it appear that the trial court was advised that the offense was committed in "Indian country," as that term is defined in 18 U.S.C. (1952 ed.) § 1151. No jurisdictional issue was raised nor suggested when he was arraigned and sentenced.
January 2, 1957, he filed a petition for writ of habeas corpus. The return and answer thereto raised issues of fact that could not be "determined from the face of the record," so this court referred the matter to the trial court. See Rule on Appeal 56 (5), RCW, Vol. 0.
January 30, 1958, the superior court of Yakima county entered findings of fact that, omitting the formal portions thereof, state:
"1. At the time of the commission of the offense charged in the Information, the petitioner was an enrolled member of the Yakima Tribe of the State of Washington.
"2. That the alleged offense was committed within the exterior boundaries of the Yakima Indian Reservation, to-wit: Toppenish, Yakima County, Washington, which city is located within `Indian country', as defined in Title 18 U.S.C.A., Sec. 1151 (250) 62 Stat. 757, Amended May 24, 1949, 63 Stat. 94."
18 U.S.C. (1952 ed.) § 1153, generally known as the Ten Major Crimes Act[2], provides:
"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, *92 namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
"As used in this section, the offense of rape shall be defined in accordance with the laws of the State in which the offense was committed, and any Indian who commits the offense of rape upon any female Indian within the Indian country, shall be imprisoned at the discretion of the court.
"As used in this section, the offense of burglary shall be defined and punished in accordance with the laws of the State in which such offense was committed." (Italics ours.)
Two questions are presented: (1) May jurisdiction of the trial court be questioned for the first time by a writ of habeas corpus? and (2) Did the federal court have exclusive jurisdiction to try Mr. Wesley for the alleged crime of grand larceny, by reason of the facts determined upon reference of the writ of habeas corpus to the trial court?[3] We conclude that both questions must be answered in the affirmative.
This court  in exceptional circumstances  has received evidence in habeas corpus proceedings supporting collateral attacks on judgments of conviction when the contention has been that due process, guaranteed to the petitioner by the constitution of the state or of the United States, has been violated or denied. The exceptional circumstances that justified the extension of the scope of inquiry in habeas corpus are set forth in RCW 7.36.130 and RCW 7.36.140.
A few of the cases in which this court has considered evidence that did not appear in the trial court record are:
Thorne v. Callahan, 39 Wn. (2d) 43, 234 P. (2d) 517 (1951). (Established that there was no understanding waiver of counsel.)
*93 In re Gensburg v. Smith, 35 Wn. (2d) 849, 215 P. (2d) 880 (1950). (Evidence received, but held it failed to establish that a plea of guilty was not knowingly and voluntarily made; and also failed to establish that the right to counsel was not competently and understandingly waived.)
In re Hein v. Smith, 35 Wn. (2d) 688, 215 P. (2d) 403 (1950). (Evidence of perjury at the trial received, but held not to establish that the prosecution procured the perjured testimony or that it knowingly presented perjured testimony to the jury.)
A case more in point with the instant one, however, is In re Andy, 49 Wn. (2d) 449, 302 P. (2d) 963 (1956). A reference to the original pleadings in that case discloses that the judgment and sentence entered by the superior court, resulting in Joe Andy's commitment to the penitentiary, are valid on their face.
Counsel, however, stipulated certain facts; namely, (a) that Joe Andy was an unemancipated member of the Yakima Indian tribe; (b) that he pleaded guilty to the charge of second-degree burglary; (c) that the crime was committed within the geographic limits of the Yakima Indian reservation upon lands, originally a part of an Indian allotment, now patented to a non-Indian; and (d) that the jurisdictional question was not brought to the attention of the trial court at the time Joe Andy pleaded guilty and was committed to the penitentiary.
We considered the stipulation and held that the superior court did not have jurisdiction of the offense. We ordered the petitioner released.
The word "jurisdiction" is derived from the Latin "juris" and "dico." It means "I speak by the law." 50 C.J.S. 1089.
"Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the court." People v. Sturtevant, 9 N.Y. 263, 269, 59 Am. Dec. 536 (1853).
[1-3] A constitutional court cannot acquire jurisdiction by agreement or stipulation. Either it has or has not jurisdiction. If it does not have jurisdiction, any judgment entered is void ab initio and is, in legal effect, no judgment at *94 all. Jurisdiction should not be sustained upon the doctrine of estoppel, especially where personal liberties are involved.
[4] It is our considered opinion that lack of original jurisdiction to hear and determine a case meets the "exceptional circumstance" rule, and that evidence of lack of jurisdiction may be received for the first time and considered in an application for writ of habeas corpus.
Fundamentally, the second question is a federal one, and we are bound by federal statutes and decisions.
The factual pattern of the instant case matches that of the tortuous judicial trail of a California Indian, Rayna Tom Carmen, who was charged with murder allegedly committed April 23, 1950. A trial held in June, 1950, resulted in a judgment of conviction that was reversed by the California Supreme Court for improper instructions. People v. Carmen, 36 Cal. (2d) 768, 228 P. (2d) 281 (1951).
Carmen was again tried and found guilty of first-degree murder in October, 1951. On automatic appeal to the Supreme Court,
"... additional evidence in the form of a stipulation was produced for the purpose of determining whether or not the state courts had jurisdiction to try defendant for the crime of murder." People v. Carmen, 265 P. (2d) 900, 901 (Cal. 1954).
The stipulation disclosed that the accused and his alleged victim were Indians and that the alleged crime was committed on an Indian allotment.
A unanimous court held that, by reason of the applicable federal statutes, the federal court had exclusive jurisdiction of the alleged crime; that the state superior court was without jurisdiction to try Carmen. The judgment of conviction was held to be a nullity; it was reversed, with directions to the trial court to dismiss the information. People v. Carmen, 265 P. (2d) 900 (Cal. 1954).
February 24, 1954, the California Supreme Court granted a rehearing
"... to give further consideration to the question of receiving additional evidence on appeal in death penalty cases." People v. Carmen, 43 Cal. (2d) 342, 344, 273 P. (2d) 521, 522 (1954).
*95 Upon rehearing, the California Supreme Court reversed its position. It affirmed the judgment of conviction. The court said:
"... We have concluded that the proposed offer to produce additional evidence on the appeal should be denied. Furthermore, even assuming that additional evidence could be received on appeal in this class of cases by stipulation or otherwise, the facts stated in the so-called `stipulation' as well as shown in the entire record are insufficient to show exclusive jurisdiction in the federal courts." People v. Carmen, supra, p. 348.
The court did not
"... pass on the question of what remedies may be available to the defendant to show alleged lack of jurisdiction in the state court." People v. Carmen, supra, p. 349.
November 10, 1954, Mr. Carmen filed a petition for writ of habeas corpus in the California Supreme Court. He alleged that the federal courts had exclusive jurisdiction, by reason of the applicable federal statutes.
Because of the alleged jurisdictional questions involved, the court issued a writ of habeas corpus and made an order of reference so that the status of the petitioner and the locus of the alleged crime could be determined by the trial court.
The referee found that petitioner and his victim were enrolled members of the Mono tribe and that the crime was committed on an Indian allotment. This appears to have been a useless gesture, for the court said:
"We have reached this conclusion because we are of the opinion that in the absence of exceptional circumstances, which are not present here, petitioner may not contest, in this collateral attack upon the final judgments of conviction, the trial court's determination and exercise of jurisdiction, upon the basis of new and additional facts which do not appear in the trial court record." In re Carmen, 48 Cal. (2d) 851, 853, 313 P. (2d) 817, 818 (1957).
The writ of habeas corpus was discharged, and the petitioner remanded to custody.
Upon the adverse ruling by the Supreme Court of California on his petition for habeas corpus, Mr. Carmen applied to the United States Supreme Court for a writ of certiorari *96 to review the judgment. January 13, 1958, his application was denied
"... without prejudice to an application for a writ of habeas corpus in an appropriate United States District Court." Carmen v. Dickson, 355 U.S. 924, 2 L.Ed. (2d) 354, 78 S.Ct. 367 (1958).
Next, Mr. Carmen filed a petition for a writ of habeas corpus in the United States District Court, Northern District, California, Southern Division. Chief Judge Goodman issued the writ and ordered petitioner discharged from custody. In re Carmen, 165 F. Supp. 942 (Sept. 1958).
September 29, 1959, the United States Court of Appeals for the Ninth Circuit affirmed the district court by Per Curiam opinion and said:
"The exhaustive opinion of Judge Goodman leaves nothing to be added, and his judgment is affirmed." Dickson v. Carmen, No. 16185, 270 F. (2d) 809 (C.A. 9th; September 29, 1959).
To analyze Judge Goodman's decision in detail would unduly extend this opinion. We believe the following summary of his ultimate decision is sufficient:
(a) Federal courts have exclusive jurisdiction over offenses enumerated in the Ten Major Crimes Act (18 U.S.C. (1952 ed.) § 1153) when they are committed by an Indian in "Indian country."
(b) "The right to be tried in a Federal Court accorded petitioner by the Ten Major Crimes Act, was not a mere procedural right, waived unless asserted. It could not have been waived even by express agreement. The Ten Major Crimes Act was enacted for the protection of the Indian wards of the United States. Both the trial court and the state's attorneys had a duty to uphold this federal statute. They had a responsibility to see to it that the court did not improperly assume jurisdiction over an Indian ward of the Federal government." In re Carmen, 165 F. Supp. 942, 950 (1958). (Italics ours.)
(c) In a proceeding on a petition for a writ of habeas corpus by an Indian charged with the commission of one of the Ten Major Crimes committed in "Indian country," a federal court will consider facts dehors the trial record in *97 order to test the jurisdiction of the state court to try the petitioner.
The futility of a state court's adopting rules at variance with these conclusions is illustrated by the history of the Carmen case in California.
We are aware of the difficulty our conclusions cause in the field of law enforcement (See State v. Begay, 63 N.M. 409, 320 P. (2d) 1017 (1958)), and of the related problems they raise, as discussed in "Extent of Washington Criminal Jurisdiction Over Indians," 33 Wash. L. Rev. 289 (1958); but the solution in this state lies in corrective legislation (see 18 U.S.C. (1952 ed. (Supp. V)) § 1162, as amended August 8, 1958, 72 Stat. 545), not in unauthorized assumption of jurisdiction by our state court.
[5] Joseph Joe Wesley was an enrolled member of the Yakima Indian tribe at the time he allegedly committed grand larceny, one of the Ten Major Crimes, within the exterior boundaries of the Yakima Indian Reservation.
In these circumstances, the Ten Major Crimes Act vests exclusive jurisdiction in the courts of the United States.
The writ of habeas corpus shall issue, and respondent is ordered to release petitioner from custody.
DONWORTH, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur. HILL, J. (dissenting)
The majority states the facts accurately and clearly. Its opinion is predicated on the federal decisions: In re Carmen, 165 F. Supp. 942 (September, 1958), and Dickson v. Carmen, No. 16185, 270 F. (2d) 809 (C.A. 9th; September 29, 1959). In the face of these decisions I am impelled to a different conclusion, realizing fully that whoever may be right the federal courts have the muscles, so far as the opening of prison doors is concerned.
The state of Washington, since its creation, has had territorial jurisdiction over all persons within its boundaries, unless restricted by Congress in the exercise of its plenary powers. Neah Bay Fish Co. v. Krummel (1940), 3 Wn. (2d) 570, 101 P. (2d) 600; Anderson v. Britton (1957), 212 Ore. 1, *98 318 P. (2d) 291, 298, 300; United States v. McGowan (1938), 302 U.S. 535, 538, 82 L.Ed. 410, 412, 58 S.Ct. 286, 287; State ex rel. Best v. Superior Court (1919), 107 Wash. 238, 181 Pac. 688. The United States district attorney for the district of Oregon in his amicus curiae brief filed in Anderson v. Britton, supra, asks and answers the basic question:
"... Does the Indian on his reservation have a natural right, guaranteed by the United States Constitution, to violate the criminal laws of a State? The answer, of course, is `No,' but the power of the United States Congress is such that it may by law shield him from the consequences of his criminal acts within the State, ..."
The only limitation upon the state's jurisdiction to try Indians for crimes committed on reservations or in "Indian country" (excepting acts which Indians were by treaty given the right to perform and excepting offenses of which tribal courts may by treaty have had exclusive jurisdiction) were the acts of Congress declaring that in such cases the federal courts had jurisdiction. 18 U.S.C., chapter 53, §§ 1151, 1152, 1153.
In State ex rel. Best v. Superior Court, supra, we said (pp. 240, 241),
"... By the enabling act, Washington was authorized to adopt a constitution, establish a state government, and was admitted into the Union upon equal footing with the original states, which carried with it the full power of enacting laws against crimes and punishing all those within her borders who might transgress such laws, be they citizens or not. This must be so, since the state became sovereign, with full power, except only those powers which had been delegated to the national government. And relator has not contended, and cannot contend, that any power was ever delegated to the national government to enact or enforce criminal laws applicable within the territorial limits of any state, except only those portions thereof which were exclusively within the jurisdiction of the Federal government, such as Indian reservations and the like...."
Since the superior court, except under the exceptional and coincidental circumstances hereafter indicated, has jurisdiction over the offense, the person charged, and the specific locus in quo, it must proceed, unless the exceptional *99 and coincidental circumstances which divest it of jurisdiction and vest jurisdiction in the federal courts are brought to its attention.
Had Joseph Joe Wesley raised the issue of jurisdiction in the superior court, or had the facts been established which are here conceded: (1) that he had not severed his tribal relations, but was enrolled in a tribe, and (2) that the locus of the crime was in "Indian country," as defined in 18 U.S.C. (1952 ed.) § 1151, the superior court would have erred in proceeding to exercise its prima facie jurisdiction, and any judgment it entered would be set aside. State v. Condon (1914), 79 Wash. 97, 139 Pac. 871.
It is to be noted that there must be a coincidence of both of these incidents to raise the jurisdictional issue in any of these cases. The enrolled Indian is subject to prosecution in the state courts for the offense charged, if committed anywhere except on a locus referred to in the statute; anybody but an unemancipated Indian is subject to prosecution in the state courts for the offense charged, if committed on the locus referred to in the statute (unless committed against an unemancipated Indian or his property). New York ex rel. Ray v. Martin (1946), 326 U.S. 496, 90 L.Ed. 261, 66 S.Ct. 307; United States v. McBratney (1882), 104 U.S. 621, 26 L.Ed. 869.
But the issue was not raised. Joseph Joe Wesley entered a plea of guilty to grand larceny. By what clairvoyant power was the superior court to know: (1) that the man entering the plea was an unemancipated tribal Indian, and (2) that he had committed the offense in "Indian country," as defined by 18 U.S.C. (1952 ed.) § 1151.
The issue is raised for the first time on an application for a writ of habeas corpus, and on the basis of new and additional facts which do not appear in the trial record. The general rule was, and should be, that the validity of a judgment in a criminal case, particularly when based on a plea of guilty, is not subject to collateral attack on jurisdictional grounds. In re Carmen (1957), 48 Cal. (2d) 851, 313 P. (2d) 817; Ex parte Wallace (1945), 81 Okla. Crim. 176, 162 P. (2d) 205. See 11 Vanderbilt Law Review 232. In other *100 words, if the lack of jurisdiction can be established only upon the basis of new and additional facts, which do not appear in the trial court record, there can, as a general rule, be no collateral attack. In re Russell (1905), 40 Wash. 244, 82 Pac. 290; In re Carmen, supra. See, also, Anderson v. Britton, supra.
Evidence has been received in our courts in habeas corpus proceedings in support of collateral attacks on judgments of conviction, as pointed out by the majority, but only under exceptional circumstances where the contention has been that due process, guaranteed to the petitioner by the constitution of the state or of the United States, has been violated or denied. The exceptional circumstances which justify the extension of the scope of inquiry on habeas corpus are covered by RCW 7.36.130 and 7.36.140. No constitutional question is involved here, and the cited statutes have no application. The majority takes the position that the lack of original jurisdiction meets the "exceptional circumstance" rule, and that the evidence of lack of such jurisdiction should be received and considered in an application for a writ of habeas corpus.
I would limit the "exceptional circumstances" to the issue of the violation of constitutional rights. It is indisputable that Joseph Joe Wesley has no constitutional right to enter his plea of guilty to grand larceny in a federal court. The right to raise the jurisdictional question, now urged upon the court, could be, and was, waived by the failure to even suggest it when pleas of guilty were entered in the superior court. In re Russell, supra.
The rationale of such a holding is set forth by the California supreme court in the following quotation from In re Carmen, supra (p. 855),
"Petitioner had the opportunity to raise the jurisdictional question here involved by presenting the alleged facts at his trials. He failed to do so and, upon the facts there alleged and proved, the trial court's implied determination that it had jurisdiction over the offenses was correct. To permit petitioner to now relitigate that issue would encourage defendants charged with crimes, the jurisdiction over which might depend upon complex factual determinations, *101 to withhold the raising of those issues until after they had attempted to obtain a favorable result at a trial on the merits, and perhaps until such time as a conviction by the court claimed to have jurisdiction would be impossible by reason of the statute of limitations, or otherwise. (See Ex parte Wallace, infra, 81 Okla. Crim. 176 [162 P.2d 205].) The sanction of such procedure would permit piecemeal litigation of factual issues which should be finally determined upon a single trial."
Two recent cases, State ex rel. Du Fault v. Utecht (1945), 220 Minn. 431, 19 N.W. (2d) 706, 161 A.L.R. 1316, and Ex parte Wallace, supra, are analyzed in the Carmen opinion. The court says of them (p. 855),
"... the problem presented was almost identical with that involved here. Petitioners therein by collateral attack on habeas corpus attempted for the first time to contest the jurisdiction of the state courts of general jurisdiction which had convicted them. It was claimed that petitioners were `Indians' and that the crimes of which they had been convicted had been committed in `Indian country.' Relief was denied in both cases upon the ground that the determination of jurisdiction by a trial court of general jurisdiction was not subject to collateral attack on habeas corpus where petitioners had not contested the jurisdiction of the court at the trial nor brought to the trial court's attention facts from which lack of jurisdiction could have been determined, and where upon the face of the trial court record there was no showing of lack of jurisdiction...."
That holding also finds support in federal decisions. In the following cases it has been held that a conviction and sentence may not be attacked in habeas corpus proceedings, upon allegations of new and additional facts purporting to show that the convicting court lacked jurisdiction over the offense because of the status of the parties or the place where the crime was committed, where there was no affirmative showing of lack of jurisdiction upon the face of the trial court record. Davis v. Johnston (1944), 144 F. (2d) 862; Hatten v. Hudspeth (1938), 99 F. (2d) 501; Toy Toy v. Hopkins (1909), 212 U.S. 542, 53 L.Ed. 644, 29 S.Ct. 416; Ex parte Savage (1908), 158 Fed. 205.
*102 These holdings are despite a recognized willingness on the part of the federal courts to look to sources outside of the record, where a petitioner claims that he has been denied his fundamental constitutional rights. Johnson v. Zerbst (1938), 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019; United States ex rel. McCann v. Adams (1943), 320 U.S. 220, 88 L.Ed. 4, 64 S.Ct. 14; Waley v. Johnston (1942), 316 U.S. 101, 86 L.Ed. 1302, 62 S.Ct. 964.
The majority relies upon In re Andy (1956), 49 Wn. (2d) 449, 302 P. (2d) 963. Nowhere in the briefs, or in the record in that case, is there any discussion of the issue now before the court. The brief in opposition to the petitioner's release in the Andy case was concerned only with (p. 450),
"... whether the term `Indian country' as defined in 18 U.S.C. (1952 ed.) § 1151, and as used in 18 U.S.C. (1952 ed.) § 1153, includes land within the limits of an Indian reservation which the United States has conveyed by patent to a non-Indian."
Five arguments were made to support the proposition that the state had jurisdiction over the locus of the crime, but it was never suggested that the judgment and sentence were being collaterally attacked on evidence of facts which were no part of the record in the original criminal case in which sentence had been imposed.
We held in Andy, and correctly, that the locus of the crime was in "Indian country" under the federal statute. That holding is not decisive of the question now before the court.
It should also be noted that State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P. (2d) 272, upon which we relied in the Andy case, does not deal with the question of the propriety of a collateral attack on a judgment of conviction in a habeas corpus proceeding; the Irvine case had nothing to do with habeas corpus, and did not involve a collateral attack upon the judgment of conviction. Irvine sought by a direct attack to have the judgment and sentence, entered on his plea of guilty to the crime of burglary, vacated within ten months after it was entered. It was established that he was an enrolled Indian, a member of the Flathead tribe, and *103 the store which he had burglarized was within the territorial limits of the Flathead Indian reservation. The judgment was set aside.
We are not here dealing with a timely, direct attack upon a judgment, but with an attempted collateral attack on a nonconstitutional issue. For the reasons indicated, I do not regard Andy or Irvine as inconsistent with the position I believe we should take; nor am I concerned because the result of taking that position may be temporarily "futile." The practical results that follow, from the position which the court now takes, present what the majority says will be "difficulty" in the "field of law enforcement." (That is a masterpiece of understatement.) The difficulties will result in a change in the federal statutes or in the holdings of the federal courts.
I would deny the application for a writ of habeas corpus.
MALLERY and FINLEY, JJ., concur with HILL, J.
FINLEY, J. (dissenting)
I agree with the views expressed, and have signed the dissenting opinion written by Hill, J. However, I feel compelled to express an individual viewpoint respecting one facet of the problem of state and federal judicial relationships involved in the instant case.
The majority opinion relies to some extent upon the action of the United States District Court, Northern District (California), Southern Division, in the case of In re Carmen (1958), 165 F. Supp. 942.
In the above-mentioned version of the Carmen matter an individual federal trial court judge, on the basis of at least debatable legal grounds comparable to those advanced by petitioner in the case at bar, issued a writ of habeas corpus. This, curiously enough, set at naught, at least temporarily, a decision of the highest, multi-judge, appellate court of the sovereign state of California.
On September 29, 1959, the individual federal judge was affirmed in a 100-word per curiam opinion of the Ninth Circuit of the United States Court of Appeals. There, ostensibly  or for that matter, presumptively  the matter was individually and collectively considered and evaluated by a *104 panel of at least three judges of that court. They may or may not have been in communication with the other members of that multi-judge Federal Circuit Court.
Thus, except for the review by the Ninth Circuit panel, the action of an individual federal trial court judge would have effectively canceled the evaluation and judgment in the matter as determined by the multi-judge, appellate court of last resort of the state of California. In re Carmen (1957), 48 Cal. (2d) 851, 313 P. (2d) 817.
If there is wisdom in experience  and there is, generally speaking  then there is much to be said for the proposition that multi-judge, appellate courts exist in our administration of justice to review the decisions of single-judge trial courts. Of course, the proposition assumes that the human mind is not infallible; and further assumes that it is reasonably more desirable, or perhaps better, that the collective evaluation and judgment of the former be substituted for that of the latter rather than the reverse procedure. It seems to me that this makes good common sense in terms of sound, desirable procedure in the administration of justice.
In view of the decision reached by the majority herein, it is perhaps beside the point  and an observation that should be addressed to the Congress in relation to the problem of law enforcement instanced by the case at bar. But the concept of joint responsibility and concurrent jurisdiction seems a more plausible, practicable and desirable solution to the instant local problem of the maintenance of peace and order than the idea of exclusive jurisdiction in either the federal or state trial courts. Any such concurrent jurisdiction, if hereafter authorized by Congress, should permit prosecution and sentence in either state or federal court, but obviously not in both for the same offense.
It is so well established that no citation of authority seems necessary for the proposition that we and other state courts of last resort are bound by pertinent and applicable decisions of the United States Supreme Court. However, until there is (1) a controlling decision by that court, or (2) a most persuasive decision of a panel of one of the multi-judge, *105 federal appellate courts, I see no reason why law enforcement, as regularly and generally administered through the courts of this state, should be restricted in the manner suggested by petitioner's argument and ordained by the decision of the majority in the case at bar. As a matter of fact, when this court is faced with a problem of statutory interpretation, or otherwise, I feel no great compulsion to bend the knee automatically, or to surrender respecting judicial views, evaluation and judgment, just because some federal trial court judge  or even a panel of three judges of a Circuit of the United States Court of Appeals  may have expressed views regarding the problem. It will be time enough to surrender respecting state appellate court, multi-judge evaluation and judgment when and if a particular problem is passed upon and decided clearly and finally by the Supreme Court of the United States.
NOTES
[1] Reported in 346 P. (2d) 658.
[2] There has been no amendment of this section, but § 1163, making embezzlement or theft from an Indian tribal organization a separate offense, was added to the code of 1956, and now reference is sometimes made to Eleven Major Crimes. 18 U.S.C. (1952 ed. (Supp. IV)) § 1163.
[3] This is a companion case to six other Indian habeas corpus proceedings. No contention is made in any of the cases that the offense was one over which only a tribal court had jurisdiction. The issues, in each case, are (1) whether the jurisdictional issue could be waived; and (2) whether the federal courts had exclusive jurisdiction. Only one of the seven cases  In re Johnnie v. Rhay, infra p. 113, 346 P. (2d) 657  raises a constitutional question.