# FILE

**IN CLERKS OFFICE**
**SUPREME COURT, STATE OF WASHINGTON**

DATE **AUG 2 1 2014**

for CHIEF JUSTICE



This opinion was filed for record
at _8:00AM_ on _Aug. 21, 2014_

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| OUTSOURCE SERVICES MANAGEMENT, LLC, | ) ) ) | No. 88482-0 |
| Respondent, | ) ) | En Banc |
| v. | ) ) | |
| NOOKSACK BUSINESS CORPORATION, | ) ) | |
| Petitioner. | ) ) | Filed ___AUG 2 1 2014___ |

OWENS, J. -- Washington State courts have jurisdiction over civil cases arising on Indian reservations as long as it does not infringe on the sovereignty of the tribe. At issue in this case is whether Washington State courts have jurisdiction over a civil case arising out of a contract in which the tribal corporation waived its sovereign immunity and consented to jurisdiction in Washington State courts. We hold that it does not infringe on the sovereignty of the tribe to honor its own corporation's decision to enter into a contract providing for jurisdiction in Washington State courts.

FACTS

Nooksack Business Corporation (Nooksack), a tribal enterprise of the Nooksack Indian Tribe,[1] signed a contract with Outsource Services Management LLC to finance the renovation and expansion of its casino. The contract contained the following clause related to sovereign immunity and jurisdiction:

> Limited Waiver of Sovereign Immunity; Waiver of Rights in Tribal Court. Subject to the limitations on recourse in Section 8.30, the Borrower hereby expressly grants to the Lender and all Persons entitled to benefit from any Loan Document an *irrevocable limited waiver of its sovereign immunity from suit* or legal process with respect to any Claim. In furtherance of this waiver, the *Borrower hereby consents* with respect to any Claim: (A) to arbitration in accordance with the provisions of Section 8.27, and (B) *to be sued in* (i) the United States District Court for Western District of Washington (and all federal courts to which decisions of the United States District Court for the Western District of Washington may be appealed), (ii) *any court of general jurisdiction in the State* (including all courts of the State to which decisions of such courts may be appealed), and (iii) only if none of the foregoing courts shall have jurisdiction, or only to permit the compelling of arbitration in accordance with Section 8.27, or the enforcement of any judgment, decree or award of any foregoing court or any arbitration permitted by Section 8.27, all tribal courts and dispute resolution processes of the Tribe. The Borrower hereby expressly and irrevocably waives any application of the exhaustion of tribal remedies or abstention doctrine and any other law, rule, regulation or interpretation that might otherwise require, as a matter of law or comity, that resolution of a Claim be heard first in a tribal court or any other dispute resolution process of the Tribe.

Clerk's Papers (CP) at 446 (emphasis added).

---

[1] The parties do not dispute that Nooksack Business Corporation is owned and controlled by the Nooksack Indian Tribe, and thus has sovereign immunity.

Nooksack failed to make a payment due on the loan. Outsource and Nooksack executed three successive forbearance agreements, but after Nooksack failed to make required payments, Outsource filed suit in Whatcom County Superior Court for breach of the loan agreement. Nooksack acknowledged that it had waived sovereign immunity but argued that nonetheless, Whatcom County Superior Court did not have subject matter jurisdiction over the case because it involved a contractual dispute with a tribal enterprise that occurred on tribal land.

The trial court denied Nooksack's motion to dismiss, ruling that it had subject matter jurisdiction because Nooksack both waived sovereign immunity and consented to the jurisdiction of Washington State courts. The trial court also certified its order for interlocutory appeal. Nooksack appealed, and the Court of Appeals found that review of the jurisdictional issue was justified under RAP 2.3(b)(4). The Court of Appeals issued a broader holding than the trial court, concluding that the waiver of sovereign immunity alone was sufficient to give the superior court subject matter jurisdiction in the case. *Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp.*, 172 Wn. App. 799, 814-15, 292 P.3d 147 (2013). Nooksack petitioned for our review, which we granted. *Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp.*, 177 Wn.2d 1019, 304 P.3d 115 (2013).

ISSUE

Does a Washington superior court have subject matter jurisdiction over this contract claim when Nooksack both waived sovereign immunity and consented to state court jurisdiction?

ANALYSIS

Nooksack contends that the superior court does not have jurisdiction over this claim because it arose out of a contractual dispute with a tribal enterprise that occurred on tribal land. Whether a court has subject matter jurisdiction is a question of law, and thus we review it de novo. *Joy v. Kaiser Aluminum & Chem. Corp.*, 62 Wn. App. 909, 911, 816 P.2d 90 (1991) (citing *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)).

There are very few limitations on the subject matter jurisdiction of superior courts in Washington. Pursuant to the Washington State Constitution, superior courts "have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. IV, § 6. This original jurisdiction includes contract claims, the subject matter of the dispute in this case.

However, the state has limited jurisdiction over civil disputes involving Indians that arise on Indian reservations. *See Powell v. Farris*, 94 Wn.2d 782, 784-85, 620 P.2d 525 (1980) (holding that the state "may exercise some jurisdiction over some

reservation conduct"). Washington State courts generally have jurisdiction over civil disputes in Indian country if either (1) the state has assumed jurisdiction pursuant to Public Law 280[2] or (2) asserting jurisdiction would not infringe on the rights of the tribe to make its own laws and be ruled by them. *Id.* at 784-87.

Importantly, both sides agree that this dispute does not fall within the scope of the civil jurisdiction that Washington assumed pursuant to Public Law 280. Thus, the question is whether asserting jurisdiction in this case would infringe on the rights of the tribe. As described below, we do not see how asserting jurisdiction in this case would infringe on the tribe's right to self-rule when its own tribal enterprise decided to consent to the jurisdiction of Washington State courts for claims related to the contract.

1. *It Does Not Infringe on a Tribe's Right to Self-Rule for State Courts to Respect the Decision of a Tribe or Tribal Enterprise To Consent to State Court Jurisdiction*

The purpose of limiting state court jurisdiction for matters arising on Indian reservations is to protect the rights of Indians to "'make their own laws and be ruled

---

[2] In 1953, Congress passed Public Law 280, which gave states permission to assume full civil and criminal jurisdiction over civil causes of action and criminal offenses occurring on a reservation. Pub. L. No. 83-280, § 7, 67 Stat. 588, 590 (1953). Washington chose to assume civil jurisdiction in eight areas of the law, but contract law was not one of those areas. *See* RCW 37.12.010. Washington will also assume full civil jurisdiction over tribes that consent to it, RCW 37.12.021, but the Nooksack Indian Tribe has not given that consent. Furthermore, it appears that Public Law 280 permits states to assume jurisdiction only over Indians—not tribes—so it is questionable whether it would even allow Washington to assume full civil jurisdiction over tribes.

by them.'" *Id.* at 786-87 (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959)). Thus, when asked whether state courts have jurisdiction in a case that occurs on a reservation, we carefully consider the interests and authority of the tribe. *Id.* at 787. Normally, the tribe's interest in self-governance is a separate interest than those of the parties. For example, if two parties on a reservation had a dispute in an area of the law regulated by the tribe but chose to file in state court, the state court would have to consider the separate question of the tribe's interest in governing the matter. *Id.* Even if the parties had agreed to state court jurisdiction, the state court may find that jurisdiction is nonetheless inappropriate because it would infringe on the tribe's right to govern the matter.

This case is entirely different. The tribe itself—acting through its tribal enterprise—consensually entered into a contract where it both waived its sovereign immunity and consented to jurisdiction in state court for claims related to that contract. It first waived its sovereign immunity with respect to any claim related to the contract. *See* CP at 446 ("the Borrower hereby expressly grants to the Lender and all Persons entitled to benefit from any Loan Document an irrevocable limited waiver of its sovereign immunity from suit or legal process with respect to any [claim

brought under the contract]").[3] The contract indicated an understanding by the parties that a waiver of sovereign immunity may not be enough to confer jurisdiction on a state court, as the contract went on to provide, "In furtherance of this waiver, *the Borrower hereby consents with respect to any Claim . . . to be sued in . . . any court of general jurisdiction in the State* (including all courts of the State to which decisions of such courts may be appealed)." *Id.* (emphasis added). The dissent states that this provision is a contractual waiver only of sovereign immunity, not of jurisdiction issues, but that ignores the plain language of the contract, where Nooksack consented to be sued in any court of general jurisdiction in the state. Given that Nooksack made the decision to enter into that contract and consent to those provisions, we do not see how state court jurisdiction would infringe on the tribe's right to self-rule.

In fact, we believe the opposite is true: ignoring the tribe's decision to waive sovereign immunity and consent to state court jurisdiction would infringe on the tribe's right to make those decisions for itself. Our decision is rooted in the United States Supreme Court's holding in *Three Affiliated Tribes of Fort Berthold*

---

[3] The dissent seems to imply that the contract's reference to the waiver of sovereign immunity as "limited" undermines the waiver in some way, although the dissent does not state how. *See* dissent at 4. In fact, the reference to the "limited" nature of the waiver reiterates that the waiver of sovereign immunity applies only to claims related to this particular contract and does not waive the tribe's sovereign immunity in other contexts. The dissent states that future contracts should "*fully* waive sovereign immunity," *id.* at 10 (emphasis added), which seems to imply that a waiver that is limited to claims related to the contract is somehow invalid. We see no basis in the law for that requirement; furthermore, it would undermine the entire notion of sovereign immunity.

*Reservation v. Wold Engineering, PC*, 467 U.S. 138, 104 S. Ct. 2267, 81 L. Ed. 2d 113 (1984). In that case, an Indian tribe filed a claim in a North Dakota state court against a non-Indian company for negligence and breach of contract related to the design and construction of a water supply project on the reservation. *Id.* at 141. The trial court dismissed the claim, ruling that it lacked subject matter jurisdiction because the claim arose in Indian country. *Id.* at 145. The North Dakota Supreme Court affirmed, but the United States Supreme Court vacated that decision. *Id.* at 145, 159. The Supreme Court held that allowing the claim to proceed in state court did not impede on tribal self-government when "the suit is brought by the tribe itself." *Id.* at 149. The Supreme Court's logic is sound, as it would be nonsensical for a state court to tell a tribe that its own decision to enter that court infringes on the tribe's own autonomy. We find this case to be similar. Nooksack chose to enter into a contractual agreement waiving its sovereign immunity and consenting to state court jurisdiction; therefore, allowing such jurisdiction does not infringe on its tribe's right to make decisions for itself. The trial court appropriately held that it had subject matter jurisdiction in this matter.

> ### 2. *We Can Consider a Tribal Enterprise's Consent to Jurisdiction When Determining Whether State Jurisdiction Would Violate the Tribe's Right to Self-Rule*

Nooksack argues that such a holding would be contrary to our long-standing rule that parties cannot confer subject matter jurisdiction by agreement or consent.

*See In re Habeas Corpus of Wesley*, 55 Wn.2d 90, 93, 346 P.2d 658 (1959) ("A constitutional court cannot acquire jurisdiction by agreement or stipulation."); *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998) (holding that while litigants can waive their right to assert a lack of personal jurisdiction, they cannot waive subject matter jurisdiction).

We disagree. While Nooksack is correct that parties cannot confer subject matter jurisdiction by agreement or consent, that does not mean we cannot take Nooksack's consent into account when determining whether jurisdiction would infringe on the tribe's right to self-rule.

The purpose of this unique limit on state court jurisdiction is to protect the independence of sovereign tribes. Thus, it is reasonable to take into account decisions made by the tribe or tribal enterprise related to state court jurisdiction when determining whether such jurisdiction would infringe on their right to self-rule. For instance, the United States Supreme Court considered the tribe's decisions when evaluating whether state court jurisdiction would interfere with tribal sovereignty in *Three Affiliated Tribes*. As discussed above, in that case, the tribe itself had filed suit in state court and the state court had dismissed the case for lack of jurisdiction. The United State Supreme Court vacated the dismissal because it "fail[ed] to see how the exercise of state-court jurisdiction in this case would interfere with the right of tribal Indians to govern themselves under their own laws." 467 U.S. at 148. The Court took

9

particular note of the fact that "the suit [was] brought by the tribe itself." *Id.* at 149. The tribe's decision to enter state courts (thereby consenting to their jurisdiction) was an important part of the analysis as to whether such jurisdiction would infringe on the tribe's right to rule itself. In this case, we believe the tribe's decision to contractually consent to state court jurisdiction is similarly important to the analysis.

Furthermore, adopting Nooksack's position would impose a significant limitation on the rights of other tribes and tribal enterprises in Washington. Other tribes and tribal enterprises may want to be able to assure parties with whom they contract that the parties can seek a remedy in Washington State courts, but adopting Nooksack's position would prohibit them from doing so.[4] We do not see how it protects tribal sovereignty to refuse to allow tribes to make this decision for themselves. Instead, we believe that allowing tribes and tribal enterprises to enter into such contracts expressing their consent to state court jurisdiction and waiving sovereign immunity respects their right to self-rule. As the United States Supreme Court has recognized, "'a party dealing with a tribe in contract negotiations has the power to protect itself by refusing to deal absent the tribe's waiver of sovereign

---

[4] The dissent appears to agree that parties may negotiate with tribes for contractual "consent to state court jurisdiction over the tribe for all claims arising from the contract." Dissent at 10. That is exactly what happened here, as Nooksack agreed that it "hereby consents with respect to any Claim . . . to be sued in . . . any court of general jurisdiction in the State." CP at 446. We are hard pressed to imagine a clearer or more explicit consent to state court jurisdiction.

immunity from suit.'" *Michigan v. Bay Mills Indian Cmty.*, ___ U.S. ___, 134 S. Ct. 2024, 2035, 188 L. Ed. 2d 1071 (2014). As part of those contract negotiations, the tribe can choose whether to waive its sovereign immunity for claims related to that contract, and we respect its decision. The tribe can also choose to express consent to state court jurisdiction for claims related to that contract, and we respect that decision as well.

Thus, we hold that where state court jurisdiction is limited solely to protect tribal sovereignty and the tribe's right to self-rule, the limit does not apply when a tribal enterprise chooses to consent to such jurisdiction. Here, Nooksack chose to enter into a contract where it both waived sovereign immunity and consented to state court jurisdiction. Honoring Nooksack's decision to enter into that contract and consent to state court jurisdiction does not infringe on the tribe's sovereignty.

*3. The Court of Appeals Opinion Was Overly Broad*

Finally, we want to address the broad scope of the Court of Appeals opinion, which held that Nooksack's waiver of sovereign immunity was enough—in and of itself—to confer subject matter jurisdiction on Washington State courts. Such a broad holding is not necessary to resolve this case, where Nooksack both waived sovereign immunity and consented to state court jurisdiction. Therefore, we do not adopt its reasoning. The issue of whether state court jurisdiction can be based solely on a

waiver of sovereign immunity is not presented in this case, and thus we take no position on it.

## CONCLUSION

Nooksack consensually entered into a contract in which it waived sovereign immunity and consented to the jurisdiction of Washington State courts. Under these circumstances, we hold that state court jurisdiction does not infringe on tribal sovereignty. We affirm the Court of Appeals, although under slightly different reasoning.

Owens, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

Johnson, J.

Fairhurst, J.

Stephens, J.

Worswick, J.P.T.

NO. 88482-0

GORDON McCLOUD, J. (dissenting)—I agree with the majority that Washington State courts have jurisdiction over civil cases arising on Indian reservations within our state, as long as exercising such jurisdiction does not infringe on tribal sovereignty. Controlling Supreme Court precedent, however, recognizes that such infringement occurs when "the exercise of state-court jurisdiction . . . would interfere with the right of tribal Indians to govern themselves under their own laws." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, PC*, 467 U.S. 138, 148, 104 S. Ct. 2267, 81 L. Ed. 2d 113 (1984). In other words, state-court jurisdiction does not lie if it intrudes on "tribal authority." *Id.* at 147.

No such intrusion would occur in a case like this if the tribe *itself* initiated the lawsuit. *E.g.*, *Williams v. Lee*, 358 U.S. 217, 219, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959) (noting that historically, "suits by Indians against outsiders in state courts have been sanctioned"); *accord Three Affiliated Tribes*, 467 U.S. at 149 ("The exercise of state jurisdiction is particularly compatible with tribal autonomy when,

1

as here, the suit is brought by the tribe itself and the tribal court lacked jurisdiction over the claim at the time the suit was instituted.").

But impermissible intrusion can occur when the tribe is the defendant and the lawsuit arises from tribal acts, on tribal land, for the benefit of tribal members, because that would threaten tribal autonomy. *E.g., Williams*, 358 U.S. at 223. Of special importance to this case, tribal gaming operations—the subject of the contract at issue here—now play a central role in tribal self-sufficiency and, hence, in tribal autonomy.[1] In addition, in this case, the only clear contractual waiver is of "sovereign immunity," not of jurisdictional issues; the tribe is not the one filing suit; the transaction at issue implicates tribal matters critical to self-sufficiency; and an alternative tribal forum exists. In such a case—which is what we have here, since the contract at issue explicitly recognizes two other forums besides the state courts— state-court jurisdiction does not lie. For that reason, I respectfully dissent.

---

[1] As Justice Sotomayor recently explained, "tribal gaming operations cannot be understood as mere profit-making ventures that are wholly separate from the Tribe's core governmental functions" and in fact "tribal business operations are critical to the goals of tribal self-sufficiency." *Mich. v. Bay Mills Indian Cmty.*, __ U.S. __, 134 S. Ct. 2024, 2043, 188 L. Ed. 2d 1071 (2014) (Sotomayor, J., concurring).

FACTS

The Nooksack Indian Tribe (Tribe) borrowed about $15 million from the predecessor in interest to Outsource Services Management. The parties do not dispute that Outsource's predecessor entered into the contract on tribal land with a tribal corporation that distributes its profits to tribal members. The Tribe used the loan to fund a casino project on tribal land for the benefit of tribal members, and the loan was secured with tribal property. After the Tribe defaulted on its loan payments, Outsource brought its contract claim in Washington State Superior Court.

ANALYSIS

1. The Contract Does Not Give Washington State Courts Jurisdiction over Outsource's Lawsuit

The majority holds that state-court jurisdiction extends to Outsource's lawsuit because the Tribe signed a contract with a clause stating that the Tribe "hereby consents . . . to be sued in . . . any court of general jurisdiction in the State." Clerk's Papers (CP) at 446. A close reading of the contract, however, reveals that this provision applied specifically to the Tribe's waiver of sovereign immunity (which might just signal relinquishment of that potential affirmative defense to a contract breach claim) was linked to the parties' explicit acknowledgment that state courts might *lack* jurisdiction and stopped short of waiving all jurisdictional issues.

3

As a general rule, waivers of sovereign immunity "'must be "construed strictly in favor of the sovereign"'" and not "'"enlarge[d] . . . beyond what the language requires."'" *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992) (alterations in original) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S. Ct. 17, 96 L. Ed. 26 (1951); *Ruckleshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S. Ct. 3274, 77 L. Ed. 2d 938 (1983)). The same rule applies when courts construe an Indian tribe's waiver of sovereign immunity. *E.g.*, *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir. 1995). We must thus take care to interpret the language of the contract before us narrowly in accordance with this rule of strict construction.

We therefore turn to the language of the contract. The contract in this case shows that the tribe granted a "*limited* waiver of its sovereign immunity." CP at 446 (emphasis added). The consent-to-suit clause appears in the very next sentence and does nothing to broaden that "limited waiver." Instead, it says that consent to sue is given solely to effectuate whatever waiver of sovereign immunity the previous sentence, alone, accomplished:

> . . . Borrower hereby expressly grants to the Lender . . . an irrevocable limited waiver of its sovereign immunity from suit or legal process with respect to any Claim. *In furtherance of this waiver*, the Borrower hereby consents . . . to be sued in (i) the United States District

4

Court for Western District of Washington [and] (ii) any court of general
jurisdiction in the State . . . .

*Id.* (emphasis added). The contract then shows the parties' acknowledgement, even
with that limited waiver, that state (and federal) courts might *lack* jurisdiction by
stating, "[A]nd (iii) only *if none of the foregoing courts shall have jurisdiction* [then
the Tribe consents to suit in] all tribal courts and dispute resolution processes of the
Tribe." *Id.* (emphasis added). Thus, the contract expressly contemplates that
Washington State courts might *not* have jurisdiction over claims arising under the
contract.

To be sure, the Tribe granted a "limited waiver of its sovereign immunity."
*Id.* But the majority's reasoning depends completely on the premise that such a
limited waiver of sovereign immunity alone automatically confers jurisdiction on
state courts to hear claims filed against a tribe.

That reasoning is inconsistent with the language of the contract, as discussed
above. It is especially inconsistent with that contractual language given the rule
(described above) that a tribe's waiver of sovereign immunity must be construed
strictly in favor of the tribe.[2]

---

[2] The majority attempts to sidestep this issue by asserting that the Tribe
"consensually entered into a contract where it *both* waived its sovereign immunity *and*
consented to jurisdiction in state court for claims related to that contract." Majority at 6

Finally, the majority's reading of the contract also conflicts with prior, persuasive, federal decisions on the exact same issue. Federal cases construing similar waiver language hold that it does *not* automatically confer jurisdiction on nontribal courts. The Eighth Circuit, for example, has held that a "waiver of sovereign immunity under the tribal ordinance's 'sue and be sued' language does not by fiat confer jurisdiction on the federal courts." *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 671 (8th Cir. 1986) (finding no federal jurisdiction where non-Indian sued Oglala Sioux Housing Authority, a tribal entity, for breach of contract). It explained, "[m]ere consent to be sued, *even consent to be sued in a particular court*, does not alone confer jurisdiction upon that court to hear a case if that court would not otherwise have jurisdiction over the suit." *Id.* (emphasis added). And it concluded that waiver of sovereign immunity alone did not confer jurisdiction because it "only nullifies the Housing Authority's use of sovereign immunity as a possible defense to Weeks' breach of contract action." *Id.* at 672.

---

(emphasis added). Relying on that interpretation of the contract, the majority says that it declines to take a position on whether "Nooksack's waiver of sovereign immunity was enough—in and of itself—to confer subject matter jurisdiction on Washington State courts." Majority at 11. But this depends on a strained reading of the contract that strictly construes it in the non-Indian plaintiff's favor.

6

The Ninth Circuit agrees with its sister circuit, stating—in the context of a consent to suit clause in a tribal entity's contract with a nontribal corporation—that "[m]ere consent to be sued does not confer jurisdiction on any particular court." *Stock W., Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 n.11 (9th Cir. 1989) (citing *Weeks*, 797 F.2d at 670).

These holdings are inconsistent with the majority's conclusion that the Tribe did, in fact, waive jurisdictional issues based on its consent to be sued in state court. They also answer the question the majority declines to answer—whether a Tribe's waiver of sovereign immunity alone confers jurisdiction on a court—with a firm no.

2. Absent an Effective Contractual Waiver, Controlling Supreme Court Precedent Bars State-Court Jurisdiction over This Lawsuit Concerning Tribal Matters Bearing Heavily on Tribal Self-Sufficiency and Autonomy

Since neither the limited waiver of sovereign immunity nor the consent-to-suit clause in this contract automatically confers jurisdiction on state courts, we are left with only one question: do the superior courts of Washington have jurisdiction in this case? Controlling Supreme Court authority compels us to say no.

The majority seems to agree that Supreme Court authority controls and relies primarily on *Three Affiliated Tribes*, 467 U.S. 138. But, as the majority acknowledges, that case permitted state-court jurisdiction where "the suit is brought by the tribe itself." *Id.* at 149. The fact that the plaintiff was an Indian tribe, rather

7

than non-Indian, was critical to the Court's decision. As the *Three Affiliated Tribes*

Court explained, such jurisdiction is not a two-way street:

> This Court, however, repeatedly has approved the exercise of jurisdiction by state courts over claims by Indians against non-Indians, even when those claims arose in Indian country. The interests implicated in such cases are very different from those present in *Williams v. Lee*, where a non-Indian sued an Indian in state court for debts incurred in Indian country, or in *Fisher v. District Court*, [424 U.S. 382, 96 S. Ct. 943, 47 L. Ed. 2d 106 (1976),] where this Court held that a tribal court had exclusive jurisdiction over an adoption proceeding in which all parties were tribal Indians residing on a reservation. As a general matter, tribal self-government is not impeded when a State allows an Indian to enter its courts on equal terms with other persons to seek relief against a non-Indian concerning a claim arising in Indian country.

*Id.* at 148-49 (citations omitted); *see also id.* at 159 (specifically declining to rule on

the fate of any potential cross claim that might be filed by the non-Indian defendant).

This case is different. Here, a non-Indian plaintiff seeks to sue the Tribe in

state court.

This case is indistinguishable from *Williams*, 358 U.S. 217. In *Williams*, just

as in this case, a non-Indian sued an Indian in state court on a contract claim. *Id.* at

217-18. The Court held that "[t]here can be no doubt that to allow the exercise of

state jurisdiction here would undermine the authority of the tribal courts over

Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.* at 223.

The same is true in this case. The Tribe entered into a contract in its own territory with an entity entirely foreign to Washington State. It obtained a loan, secured by tribal property, for the purpose of engaging in a commercial enterprise to be run by the Tribe on Indian land for the benefit of its own tribal members. And, as noted above, tribal business operations, and gaming operations in particular, are essential to achieving the goals of tribal self-sufficiency and self-government. *Bay Mills*, 134 S. Ct. at 2043 (Sotomayor, J., concurring). Thus, permitting the exercise of state-court jurisdiction in this case presents an especially high risk of infringement on the Tribe's right of self-government.

Although the Tribe and its corporation waived their sovereign immunity, the plain language of the contract does not indicate any waiver of jurisdictional issues, and federal cases are clear that such a "limited" waiver of sovereign immunity, alone, does not confer jurisdiction on a court. This court must therefore apply *Williams* and its progeny to decide whether extending state-court jurisdiction over this contract would impermissibly infringe on tribal autonomy. It would. Thus, state-court jurisdiction does not extend this far.

CONCLUSION

In *Three Affiliated Tribes*, the Court explained that "[t]he exercise of state jurisdiction is particularly compatible with tribal autonomy when, as here, the suit is brought by the tribe itself and the tribal court lacked jurisdiction over the claim at the time the suit was instituted." *Three Affiliated Tribes*, 467 U.S. at 149. The corollary is that the exercise of state jurisdiction is not "particularly compatible with tribal autonomy" when, as in this case, the suit is brought by a non-Indian *against* the tribe, there has been no showing that the tribal court lacks jurisdiction over the claim, and the other factors in *Williams* weigh against state-court jurisdiction.

This conclusion does not deprive Outsource—or others contracting with the Tribe—of recourse. Outsource can bring its claims in the tribal court or dispute resolution system (and federal courts may also have jurisdiction). Other parties who contract with the Tribe can accept tribal jurisdiction or negotiate for waivers of tribal autonomy sufficient to fully waive sovereign immunity, fully waive all jurisdictional challenges, and fully consent to state court jurisdiction over the tribe for all claims arising from the contract. But that did not occur here, and extending state-court jurisdiction to this case without such full and clearly expressed consent conflicts with *Williams* and infringes on the Tribe's authority to govern its own affairs. I therefore respectfully dissent.

10

George McCloud, J.

Gonzáles, J.