## APPLICATION OF DE MARRIAS
### (91 N.W.2d 480)
(File No. 9700. Opinion filed July 23, 1958)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Petitioner-Appellant.

**Phil Saunders,** Atty. Gen., **George W. Wuest,** Asst. Atty. Gen., for Respondent.

HANSON, J. In this habeas corpus proceeding petitioner, LaVern DeMarrias, appeals from an order of the Circuit Court of Minnehaha County denying his release from the state penitentiary.

DeMarrias is an Indian. On April 25, 1957 he was sentenced by the Circuit Court of Roberts County to serve a term of two years in the state penitentiary for the crime of burglary. The burglary was committed on non-Indian patented land within the City of Sisseton, in Roberts County, which city is located within the original exterior boundaries of the Lake Traverse Indian Reservation.

Petitioner challenges the authority of the state to prosecute for the offense committed contending the federal court had sole jurisdiction.

■ In the field of Indian criminal law jurisdiction is divided between the federal, state, and tribal courts. Cohen, Handbook of federal Indian Law, p. 358. Jurisdiction in a particular case is dependent upon the following variable factors, viz.: (1) locus of the crime, (2) status of the Indian, and (3) nature or degree of the crime.

In the present case the status of DeMarrias is not questioned. He is a tribal Indian regularly enrolled on the Sisseton-Wahpeton tribal census roll. Furthermore, the offense of burglary constitutes one of the "ten major crimes". Title 18, Section 1153, U.S.C.A. provides:

**Any** Indian who commits against the person or property of another Indian **or other person** any of the following offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, **burglary,** robbery, and larceny **within the Indian country,** shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. * * *" **(Underscoring** added)

The term "within the Indian country" is defined in Title 18 Section 1151, U.S.C.A. as follows: "* * * (a) all land within the limits of any Indian reservation under the jurisdiction of the United States govenment, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

The issue here, therefore, concerns simply the locus of the crime. If the offense was committed "within the Indian country", the federal court had exclusive jurisdiction otherwise the offense was properly prosecuted in our state court. To determine the question it is necessary to review the various legislative enactments, Indian treaties, and agreements affecting the locality of the crime.

A century ago the territory now comprising the State of South Dakota was all Indian country occupied largely by seven bands of Sioux Indians, namely, the Teton, Yankton, Yanktonai, Mdewakanton, Wahpekute, Sisseton and Wahpeton.

The original "Lake Traverse Reservation" now commonly known as the "Sisseton-Wahpeton Indian Reservation" was created by a Treaty concluded on February 19, 1867 between the United States Government and the Sissiton and Warpeton [sic] Bands of the Dakota or Sioux Indians. 15 Statutes at Large, p. 505. The Reservation was established because "* * * a portion of the Sissiton and Warpeton [sic] bands of Santee Sioux Indians * * *not only preserved their obligations to the government of the United States, during and since the outbreak of the Medewakantons [sic] and other bands of Sioux in 1862, but freely perilled their lives during that outbreak to rescue the residents on the Sioux reservation, and to obtain possession of white women and children made captives by the hostile bands; and that another portion of said Sissiton and Warpeton [sic] bands

* * * who did not participate in the massacre of the whites in 1862, fearing the indiscriminate vengeance of the whites, fled to the great prairies of the northwest, where they still remain; * * *." To provide for these friendly Sisseton-Wahpeton Sioux Indians the treaty set apart the following lands as their permanent reservation:

"Beginning at the head of Lake Travers[e], and thence along the treaty line of the treaty of 1851 to Kampeska Lake; thence in a direct line to Reipan or the northeast point of the Coteau des prairie[s], and thence passing north of Skunk lake, on the most direct line to the foot of Lake Traverse, and thence along the treaty line of 1851 to the place of beginning." Sisseton is located in Township 126 North Range 51, West of the 5th P.M., South Dakota, which is within the exterior bondaries of the reservation established by the Treaty of 1867.

By the Act of February 22, 1889, Ch. 180, 25 Statutes at Large, p. 676, Congress provided for the division of Dakota Territory into two states and enabled the people of North Dakota, South Dakota, Montana, and Washington to form separate state governments. With reference to Indian lands the Enabling Act provided:

"That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States; * * *."

On December 12, 1889 an "Agreement" was entered into between the United States Government and the Sisseton and Wahpeton bands of the Dakota or Sioux Indians whereby the Indians " * * * hereby cede, sell, relinquish, and convey to the United States all their claim, right, title, and interest in and to all the unallotted lands within the limits of the reservation set apart to said bands of Indians as

aforesaid remaining after the allotments and additional allotments provided for in article four of this agreement shall have been made." 26 United States Statutes at Large, p. 1035. It is provided in the Act of Congress ratifying the Agreement of 1889: "That the lands by said agreement ceded, sold, relinquished, and conveyed to the United States shall immediately, * * * be subject only to entry and settlement under the homestead and townsite laws of the United States, excepting the sixteenth and thirty-sixth sections of said lands, which shall be reserved for common school purposes, **and be subject to the laws of the State wherein located:** * * *." Section 30, Chapter 543, 1891 (26 United States Statutes at Large, p. 1039). The terms of the Act of Congress ratifying this Agreement were embodied in the Proclamation of the President opening the ceded lands to settlement. 27 United States Statutes at Large, p. 1017.

■ It is readily apparent therefrom that the City of Sisseton is not situated on "land within the limits of any reservation". Consequently it is not within the purview of the term "Indian country" as defined and used in Sections 1151, 1152, and 1153 of Title 18 U.S.C.A.

■ By virtue of the "1889 Agreement" the Sisseton-Wahpeton Indians diminished the Lake Traverse reservation by ceding a portion thereof to the United States. The ceded, or unallotted, lands were restored to the public domain and thereafter opened for settlement by Proclamation. The "opened" portion of the reservation thus came under the jurisdiction of the State of South Dakota. Criminal jurisdiction over the reserved, or "closed", portion of the reservation remained in the tribal or federal courts. United States v. La Plant, D.C., 200 F. 92; State v. Sauter, 48 S.D. 409, 205 N.W. 25. As stated in United States v. Pelican, 232 U.S. 442, 34 S.Ct. 396, 398, 58 L.Ed. 676, "The evident purpose of Congress was to carve out of the portion of the reservation restored to the public domain the lands to be allotted and reserved, as stated, and to make the restoration effective only as to the residue."

There is an informative article on the subject in Vol. 2 of the South Dakota Law Review by Mr. Clinton G. Richards,

U.S. Attorney for the District of South Dakota. According to Mr. Richards three different kinds of property are declared to be "Indian Country" in Section 1151 of Title 18 U.S.C.A. He points out that "Under subdivision (a) of the section covering 'land . within the limits of any Indian reservation,' some question has been raised as to just what are the 'limits' of any Indian reservations" in South Dakota. In his opinion "those portions of the Pine Ridge, Rosebud, Lower Brule and Crow Creek Reservations which have never been opened to white settlement by any act of Congress or presidental proclamation, and known as the 'closed' portion of such reservations are clearly within such 'limits,' and that the federal court has jurisdiction over any violation of the laws of the United States involving an Indian, whether the acts are committed upon patented or unpatented land within such limits. However, in those areas which are included within the original territorial limits of the Indian reservations but which have been opened to white settlement from time to time, and which . at this time practically include all of the Cheyenne, Standing Rock, Sisseton and Yankton Sioux Reservations, the 'limits' of such reservations are confined to the portions thereof for which the United States still retains title, such as, for example, the agency, school and hospital grounds, and together with all the remaining Indian allotments wherever located on such reservations held in trust for the allotment Indians."

In the frequently cited case of Tooisgah v. United States, 10 Cir., 186 F.2d 93, 97, on somewhat similar facts, the court said: "When, however, the tribes occupying the reservation ceded the lands embraced within it to the United States, relinquishing and surrendering 'all their claim, title and interest,' subject to the allotments in severalty, and every allottee was given the benefit of and made subject to the laws, both criminal and civil, of the state or territory, with the gift of citizenship and equal protection of the laws, Section 6 of the Act of February 8, 1887, 24 Stat. 388, we think it cannot be doubted that Congress thereby intended to dissolve the tribal government, disestablish the organized reservation,

and assimilate the Indian tribes as citizens of the state or territory", citing United States v. La Plant, 200 F. 92. In the present case we find nothing contained in the "1889 Agreement" indicating an intention to dissolve the tribal government of the Sisseton-Wahpeton Sioux Indians or to disestablish the reserved, or "closed", portion of their reservation. In fact, the tribal organization is still existing. Their Tribal Constitution was approved by the Commissioner of Indian Affairs on October 16, 1946. Article I recognizes the limited extent of their jurisdiction in the following language: "The jurisdiction of the Sisseton-Wahpeton Sioux Tribe shall extend to all Indian-owned lands lying in the territory within the original confines of the Sisseton-Wahpeton Lake Traverse Sioux Reservation."

The following cases have no application here as they concern crimes committed on land situated within the territorial limits of "closed" Indian reservations over which the federal government unquestionably retains exclusive jurisdiction, viz.: State v. Pepion, 125 Mont. 13, 230 P.2d 961; State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P.2d 272; Guith v. United States, 9 Cir., 230 F.2d 481; State ex rel. Bokas v. District Court, 128 Mont. 37, 270 P.2d 396; and Application of Andy, 49 Wash.2d 449, 302 P.2d 963.

Petitioner was accordingly properly prosecuted by the state for the offense of burglary committed in the City of Sisseton, Roberts County, South Dakota.

Affirmed.

All the Judges concur.