Nathan Jerry ELLIS, Petitioner,

v.

The STATE of Oklahoma, and R. R. Raines, Warden, Oklahoma State Penitentiary, Respondents.

No. A–13282.

Court of Criminal Appeals of Oklahoma.

Oct. 16, 1963.

Ralph Samara, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for respondents.

PER CURIAM.

This is an original petition for habeas corpus brought by Nathan Jerry Ellis, an inmate of the Oklahoma State Penitentiary, McAlester, Oklahoma.

In said petition it is alleged that the petitioner is restrained of his liberty under a void proceeding, judgment and sentence entered against him in the district court of Custer county, Oklahoma, for want of jurisdiction because the United States Congress by statute fixed exclusive jurisdiction in the United States courts in cases of this character. The foundation for this contention does not appear on the face of the record heretofore made in this case.

It appears that the prosecution was instituted on October 15, 1956 by information against said petitioner charging him with murder, allegedly committed on September 21, 1956. A severance was granted from his co-defendant, and petitioner was tried separately. On December 10, 1956 Ellis was convicted of murder and received a life sentence in the penitentiary. He appealed from said judgment and sentence, and on November 13, 1957 the conviction was reversed on grounds other than as now asserted herein. Ellis v. State, Okl.Cr., 318 P.2d 629. Thereafter he was again tried, and convicted of first dgeree manslaughter and sentenced on February 17, 1958 to sixty years in the state penitentiary, from which judgment and sentence he appealed, and which was affirmed on October 22, 1958. Ellis v. State, Okl.Cr.App., 331 P.2d 415.

On July 5, 1960 a petition for writ of certiorari was filed in the United States Supreme Court, and the application therefor was denied on October 10, 1960.

An application for writ of habeas corpus was lodged in the United States District Court for the Eastern District of Oklahoma, which was denied on March 29, 1961. This case was thereafter appealed to the United States Circuit Court of Appeals, tenth circuit, and the judgment of the lower court was affirmed. Ellis v. Raines, 10 Cir., 294 F.2d 414.

There are several reasons why this action cannot be sustained. First, it appears that in all of the proceedings heretofore mentioned the exclusive jurisdiction of the United States courts was never raised at any time in the trial on the merits.

This proceeding was lodged with this Court on August 9, 1962, long after the three-year statute of limitations had barred further prosecution in either the state or federal courts.

Thus it would appear that Ex parte Wallace, 81 Okl.Cr. 176, 162 P.2d 205 would control this matter. That case holds:

"Where Indian pleads guilty to information charging rape in first degree and no jurisdictional question is raised until after more than three years have elapsed so as to bar prosecution in either state or federal court, the jurisdiction of the state court can not be challenged in collateral proceeding in habeas corpus on ground that land on which offense was committed was restricted Indian allotment and that the person assaulted was a restricted Indian.

"Where information charges crime of rape was committed in Cotton County, the jurisdiction of the court is an issue in the trial court; the plea of guilty by accused who appears with counsel and the finding of guilt and sentence of accused upon his plea of guilty is conclusive finding of jurisdiction and such finding may not be attacked in a collateral proceeding. *An exception to this rule is where the petitioner asserts that his conviction was obtained by a denial to him of due process of law.*" [Emphasis now supplied.]

But the rule in the Wallace case is subject to another restriction as to jurisdiction. It is axiomatic that in a case involving an interpretation of federal statutes, this Court and all other state courts of last resort are bound by all pertinent applicable federal statutes and decisions to be controlling.

■ This is the principal issue for determination herein—does the matter lie within the exclusive jurisdiction of the federal courts or within the jurisdiction of the State of Oklahoma?

In his petition in support of the claim of lack of jurisdiction, it is asserted:

"Your petitioners * * * that they are enrolled, unemancipated members of the Cheyenne Indian tribe, wards of the Federal Government, listed on the tribal rolls at Cheyenne and Arapaho Indian sub-agency at Concho, Oklahoma, and that the deceased named in the foregoing information is also listed on the tribal rolls of the Cheyenne Indian Tribe, and that the 'alleged offense' for which the petitioners were tried and convicted, occurred on a county road, known as the Old Mill Road, approximately a mile south of the city limits of the town of Clinton, in Custer County, and is within limits of the Cheyenne and Arapaho Indian Reservation. That 'Indian Reservation' as used in the several Acts of Congress means 'Indian country' as defined in 18 U.S.C.A. Sec. 1151.

\* \* \* \* \* \*

"That crimes committed by Indians in 'Indian country' is an offense 'within the exclusive jurisdiction of the United States' under 18 U.S.C.A. sec. 1153, 18 U.S.C.A. sec. 1153, while there is Federal Legislation which permits a tribe to consent to State jurisdiction, only five tribes have availed themselves of it, that the Cheyenne Indian Tribe is not one of the five."

The record supports the statement that this petitioner was carried on the roll of the Arapaho-Cheyenne Indian Agency, at Concho, Oklahoma, though the roll was not an official one, as testified to by James M. Hayes, real property officer of said Agency.

The petitioner relies on the provisions of Tit. 18 U.S.C.A. § 1153, reading as follows:

"Any Indian who commits against the person or property of another Indian or other person any of the fol-lowing offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. * * *"

It is conceded by the State of Oklahoma that the deceased, Victor Quick, was at the time of his death on the unofficial rolls of the Cheyenne Indians.

Petitioner also relies on Tit. 18 U.S.C.A. § 1151, which provides:

"Indian country defined

"Except as otherwise provided in sections 1154 and 1156 of this title [18 U.S.C.A.], the term 'Indian country', as used in this chapter, means (a) *all land within the limits of any Indian reservation* under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) *all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.*" [Emphasis now supplied.]

Title 18 U.S.C.A. § 1152 provides in part:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."

It is not contended by the State that the limits of the reservation have been dissolved by law, only that the land on which

the killing occurred was a country road maintained by the State, not land within the territorial limits of an Indian reservation, nor within what is defined as "Indian country".

The decisive issue is, what was the character of the lands at the time of the commission of the crime. Was it such as to confine jurisdiction on the United States? If not, then this petition for writ of habeas corpus must fail. The land involved herein prior to March 3, 1891 was an Indian Reservation owned and occupied by the Cheyenne and Arapaho Indians. On the aforesaid date the Congress of the United States approved an agreement entered into by and between the Cheyenne-Arapaho Indians and the Government of the United States in October, 1890. Therein (Vol. 26 Stat. at Large 1889–1891, pp. 989 and 1022) the Cheyennes ceded all their lands, without any reservation whatever, either express or implied, and all their claims, title and interest of every kind and character to the Government of the United States, subject to allotment, including the lands herein involved. When Congress ratified the aforementioned agreement of secession, it thereby dissolved the Cheyenne-Arapaho reservation as such. Under the said treaty the Indians in said area were made subject to the laws, both civil and criminal, of the territory, and later of the State of Oklahoma (Organic Act, § 12, May 2, 1890, c. 182, 26 Stat. at L. p. 88, Okl.Const. Art. 1, § 3) with the gift of citizenship and equal protection of the laws.

██ Thus the Government of the United States did disestablish the Cheyenne-Arapaho Reservation and assimilate the said Indians as citizens of the State of Oklahoma. United States v. LaPlant (D.C.) 156 F. Supp. 660.

██ Tooisgah v. United States, 186 F.2d 93 (Tenth Circuit) is a case we believe to be clearly in point. Therein a full-blooded Indian allegedly murdered another full-blooded Indian on allotted lands which had originally been part of an Indian Reserva-

tion, but which lands had been ceded to the Government of the United States, subject to allotments. It was held that such lands were not an "Indian Reservation" within the meaning of the statute defining "Indian country", and that the United States courts had no jurisdiction of the prosecution. It was appropriately said in the opinion:

"When the legislative scheme is considered in its historical setting, we think it of controlling significance that instead of employing the familiar term 'Indian country', with its broad and flexible definition to delineate federal jurisdiction, Congress chose language carefully designed to recognize the sovereign jurisdiction of a state, unless the offense was committed on a place set apart for the government of the Indians as a tribe. The deliberate choice of the phrase 'within any Indian reservation under the jurisdiction of the United States Government' indicates, we think, a Congressional disposition to restrict federal jurisdiction to organized reservations lying within a state.

\*      \*      \*      \*      \*      \*

"But, judging federal jurisdiction here under the words of the statute when the offense was committed, we are now constrained to hold that when the reservation was dissolved and the tribal government broken up, the allotted lands lost their character as lands 'within any Indian reservation'. Nor did they retain or acquire a character and identify peculiar to a separate Indian reservation. We therefore hold that the court lacked jurisdiction over the offense."

See also Application of DeMarrias, 77 S.D. 294, 91 N.W.2d 480 to the same effect.

This Court in an opinion by Brett, J., involving a similar contention, expressly followed the Tooisgah case in denying the petition for habeas corpus, wherein we quoted extensively the rule of that case.

(In re Application of Yates, Okl.Cr., 349 P.2d 45)

The petitioner herein relies principally on the case of Seymour v. Superintendent of Washington State Penitentiary, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346, but that case is not in point for therein the land on which the crime was committed laid within the limits of the Colville Indian Reservation, which had present existence as such, never having been dissolved, as the Cheyenne Reservation herein had been.

█ The lands and Indians herein involved not being within an Indian Reservation and within Indian country are therefore not within the jurisdiction of the United States Government, but are within the jurisdiction of the State of Oklahoma.

We are, therefore, compelled to hold herein that the writ of habeas corpus must be denied. It is so ordered.

The Court acknowledges the aid of Supernumerary John A. Brett in the preparation of this opinion. After a tentative opinion was written, upon report and consideration in conference, the foregoing opinion was adopted by the Court.