ALEXANDER BIRD IN THE GROUND,
Plaintiff,

v.

DISTRICT COURT OF the THIR-
TEENTH JUDICIAL DISTRICT of the
State of Montana, IN AND FOR the
COUNTY of BIG HORN, and the Hon-
orable Charles B. Sande, a Judge there-
of, Defendants.

Civ. No. 533.

United States District Court
D. Montana,
Billings Division.

April 9, 1965.

Charles F. Moses, Billings, Mont., for plaintiff.

JAMESON, District Judge.

Plaintiff has filed a petition, with supporting brief, seeking a temporary injunction restraining the defendants until further order of this court from proceeding in a criminal action pending in the district court of the Thirteenth Judicial District of the State of Montana, in and for the County of Big Horn, wherein the State of Montana is plaintiff and Alexander Bird in the Ground, the petitioner herein, is defendant; and for an order to show cause why the temporary restraining order should not be made permanent. The action in state court, in which the defendant (petitioner here), an Indian, is charged with the crime of rape, was set for trial on April 7, 1965. His petition to this court was presented on April 6.

Petitioner alleges that he has been denied the benefits of the Fifth [1],

1. The Fifth Amendment provides in pertinent part that, "No person shall * * * be deprived of life, liberty, or property, without due process of law * * *."

Sixth [2], and Fourteenth [3] Amendments to the Constitution of the United States, and of the provisions of 18 U.S.C.A. § 242 [4], in that (1) he has been denied a speedy trial, more than six months having elapsed since his arraignment; (2) he did not have the benefit of counsel until after the expiration of six months from his arraignment; and (3) he cannot receive an impartial jury trial by reason of the systematic exclusion of Indians from service on the panel by which he will be tried.

Petitioner urges this court to issue injunctive relief under the provisions of 28 U.S.C.A. § 2283, which read:

"The court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In Stefanelli v. Minard, 1951, 342 U.S. 117, 123, 72 S.Ct. 118, 121, 96 L.Ed. 138, in civil proceedings brought under the Civil Rights Act, petitioners sought an injunction against the use, in pending state criminal proceedings against them in New Jersey, of evidence claimed to have been obtained by an unlawful search by state police. While not in point factually, the language of the Court is most persuasive with respect to the precise questions here presented. In holding that the district court properly dismissed the complaints, the Court said in part:

"The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality *in the impaneling and selection of the grand and petit juries*, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.

"Mr. Justice Holmes dealt with this problem in a situation especially appealing: 'The relation of the United States and the Courts of the United States to the States and the Courts of the States is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years and can not be disposed of by a summary statement that justice requires me to cut red tape and to intervene.'" (Emphasis supplied.)

It will be noted that the opinion specifically refers to unconstitutionality in the impanelment and selection of grand and petit juries. In the footnote following the word "grand", the Court cited Smith

2. The Sixth Amendment provides in part that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District wherein the crime shall have been committed * * *."

3. The Fourteenth Amendment provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

4. 18 U.S.C.A. § 242 relates to the deprivation of rights under color of law, and section 243 prohibits the exclusion of jurors on account of race or color. Counsel's brief also relies upon 42 U.S.C.A. § 1983, which is a part of the Civil Rights Act.

v. State of Texas, 1940, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84, where the conviction of a Negro upon an indictment returned by a grand jury of a county which systematically excluded Negroes, was reversed on the ground that the defendant had been denied the equal protection of the laws, in violation of the Fourteenth Amendment. In a footnote following the word "petit", the Court cited Strauder v. West Virginia, 1879, 100 U.S. 303, 25 L.Ed. 664, and Pierre v. State of Louisiana, 1939, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757, where the Court reversed convictions in cases where the jury commissioners of a state court had intentionally and systematically excluded Negroes from among the persons summoned and listed for jury service.

The excerpt from the opinion in Stefanelli v. Minard, supra, was quoted with approval in the more recent case of Cleary v. Bolger, 1963, 371 U.S. 392, 397, 400, 83 S.Ct. 385, 390, 9 L.Ed.2d 390, where the Court said further:

"The withholding of injunctive relief against this state official does not deprive respondent. of the opportunity for federal correction of any denial of federal constitutional rights in the state proceedings. To the extent that such rights have been violated, cf., e. g., Mapp v. Ohio, supra [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081], he may raise the objection in the state courts and then seek review in this Court of an adverse determination by the New York Court of Appeals. To permit such claims to be litigated collaterally, as is sought here, would in effect frustrate the deep-seated federal policy against piecemeal review."

The recent case of Baines v. City of Danville, 4 Cir.1964, 337 F.2d 579, 591, contains an excellent summary of the cases construing section 2283 in civil rights cases. The court said in part:

"Our construction is strongly supported by the Supreme Court's consistent support of the principle of § 2283 in civil rights cases. In every

case before the Supreme Court in which federal interference with state court proceedings has been premised upon asserted denials of civil rights, the Supreme Court has required or sanctioned federal forbearance. It has usually done so on the basis of considerations of equity and comity fashioned by it, but which are identical with those which underlie the statute. If judicial principles of equity and comity prevent federal stay of criminal proceedings in a state court, it is difficult to see how an unqualified congressional command to the same end can be ignored. If a subsequent act of the Congress is an implied repeal of the absolute congressional direction, it cannot reasonably be said not to have modified a judicially fashioned rule which, at best, is coextensive with the earlier statute. The Third Circuit's holding that the Civil Rights Act's creation of a general equity jurisdiction created an exception to § 2283, but that it could not grant an injunction because of equitable principles underlying or concomitant with § 2283 is only a denigration, unintentional of course, of the Congress."

Petitioner alleges further that both he and the complaining witness are unallotted Crow Indians residing on the Crow Indian Reservation, and that the alleged act of rape "occurred in 'Indian country' as defined by Title 18, Section 1151, United States Code Annotated, on lands formerly a part of the Crow Indian Reservation but ceded to the United States Government * * *". Petitioner argues accordingly that the federal court has exclusive jurisdiction of the alleged offense.

Section 1151 in part provides that "Indian country" means "all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent * * *".

While the "Indian country" includes private lands located within the

984

exterior boundaries of an Indian reservation (Seymour v. Superintendent of Washington, 1962, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346), it does not include lands which have been ceded to the United States and are not within the limits of an existing reservation. See De Marrias v. State of South Dakota, 8 Cir.1963, 319 F.2d 845, affirming the opinion of the district court reported in 206 F.Supp. 549; Ellis v. State, Okl.Cr.App.1963, 386 P.2d 326, cert. den. 376 U.S. 945, 84 S.Ct. 801, 11 L.Ed.2d 768.

Under the foregoing authorities I conclude that this court would not be warranted in granting injunctive relief. I do not presume to pass upon the merits of plaintiff's claim that his constitutional rights are being violated. At this time these are matters for determination in the state court.

The application for a temporary injunction and order to show cause is denied.